WILSON, Circuit Judge,
whom MARTIN, Circuit Judge, joins as to Part III, concurring:
I was a member of the original panel in this case, in which I submitted three separate dissents arguing that Florida’s Firearm Owners’ Privacy Act (the Act) violates *1324 the First Amendment. Accordingly, I concur with the Majority that the Act is unconstitutional. However, the Majority applies intermediate scrutiny to strike down the Act. I would reach the same result by applying strict scrutiny.
The Act imposes a content- and viewpoint-based restriction on physicians’ speech. It restricts physicians’ communications with patients about a specific subject — the possession of firearms — to prohibit advocating a specific viewpoint— firearm safety. My reading of Supreme Court precedent leads me to believe that strict scrutiny is the appropriate level of scrutiny for such a restriction on speech. See, e.g., Reed v. Town of Gilbert, 576 U.S. —, -, 135 S.Ct. 2218, 2227 (2015); Sorrell v. IMS Health Inc., 564 U.S. 552, 565-66, 131 S.Ct. 2653, 2664 (2011); Holder v. Humanitarian Law Project, 561 U.S. 1, 45, 130 S.Ct. 2705, 2734 (2010). The record-keeping, inquiry, and anti-harassment provisions of the Act do not survive this demanding standard.
I. Strict Scrutiny
I write separately to underscore the importance of applying the most demanding standard of scrutiny to this content-based law. Under the First Amendment, the “government has no power to restrict expression because of its ... content.” Ashcroft v. ACLU, 535 U.S. 564, 573, 122 S.Ct. 1700, 1707, 152 L.Ed.2d 771 (2002) (internal quotation marks omitted). The Supreme Court recently reiterated that laws that restrict speech “based on its communicative content ... are presumptively unconstitutional.” See Reed, 135 S.Ct. at 2226. A content-based speech restriction can stand only if it survives strict scrutiny. United States v. Playboy Entm’t Grp., Inc., 529 U.S. 803, 813, 120 S.Ct. 1878, 1886 (2000).
While my previous dissents in this case evaluated the Act through the lens of intermediate scrutiny, after the Supreme Court’s decision in Reed last year reiterated that content-based restrictions must be subjected to strict scrutiny, I am convinced that it is the only standard with which to review this law. See Reed, 135 S.Ct. at 2227. A law is content-based if it “applies to particular speech because of the topic discussed or the idea ... expressed.” Id. The Reed Court cited as an “obvious” content-based distinction “defining regulated speech by particular subject matter.” Id. The restrictions imposed by the Act depend entirely on the content of speech. The Act aims to suppress speech on only one topic: firearms. It is hard to imagine a more paradigmatic example of a content-based law.
The state’s subversive attempt to stop a perceived political agenda chills speech based on not only content but also a particular viewpoint. The Act silences doctors who advance a viewpoint about firearms with which the state disagrees. The Act’s legislative history indicates that the concern motivating the law was firearm-safety messages that were perceived as a political agenda against firearm ownership. Statements by government officials explaining the reasons for an action can indicate an improper motive. See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 268, 97 S.Ct. 555, 565, 50 L.Ed.2d 450 (1977); see also Sorrell, 564 U.S. at 565, 131 S.Ct. at 2663 (“[A] statute’s stated purposes may ... be considered.”). This viewpoint discrimination is a “blatant” and “egregious form of content discrimination” and thus provides further support for an application of strict scrutiny. Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 829, 115 S.Ct. 2510, 2516, 132 L.Ed.2d 700 (1995).
*1325 Applying strict scrutiny to content-based speech restrictions is also essential to protecting the values that the First Amendment seeks to protect. We must make sure that there is “no realistic possibility that official suppression of ideas is afoot.” R.A.V. v. City of St. Paul, 505 U.S. 377, 390, 112 S.Ct. 2538, 2547 (1992). The government must not regulate speech “based on hostility — or favoritism — towards the underlying message expressed.” Id. at 386, 112 S.Ct. at 2545. Florida, perhaps guided by a paternalistic notion that it needs to protect its citizens from viewpoints they do not like, prohibits doctors from discussing an entire topic and advocating a position with which it does not agree. This it cannot do.
Content-based restrictions on speech are permitted only when they fall within a few historic and traditional categories, such as obscenity or defamation. See Alvarez, 132 S.Ct. at 2544. Absent from any such category of unprotected speech is truthful speech by physicians.[1] However, the Supreme Court has not squarely addressed the appropriate level of protection for professional speech. While I agree with the majority that rational basis is not appropriate, I hesitate to compare this case to other professional speech situations in which the state has a valid interest in regulating a specialized profession. See, e.g., Gentile v. State Bar of Nevada, 501 U.S. 1030, 1051-52, 111 S.Ct. 2720, 2733, 115 L.Ed.2d 888 (1991). Proscribing access to a profession is entirely different than prohibiting the speech of an entire group of professionals. See Thomas v. Collins, 323 U.S. 516, 544, 65 S.Ct. 315, 329 (Jackson, J., concurring) (“[T]he state may prohibit the pursuit of medicine as an occupation without its license but I do not think it could make it a crime publicly or privately to speak urging persons to follow or reject any school of medical thought.”). Because, as the district court noted, other regulations in this realm govern the access to or practice of a profession, they do not “prohibit truthful ... speech within the scope of the profession.” Wollschlaeger v. Farmer, 880 F.Supp.2d 1251, 1262 (S.D. Fla. 2012); cf. Thompson v. W. States Med. Ctr., 535 U.S. 357, 374-75, 122 S.Ct. 1497, 1507-08, 152 L.Ed.2d 563 (2002); Legal Servs. Corp. v. Velazquez, 531 U.S. 533, 547-48, 121 S.Ct. 1043, 1052 (2001); Conant v. Walters, 309 F.3d 629, 637-38 (9th Cir. 2002).
The Act does not survive strict scrutiny because it is not. narrowly tailored to compelling state interests. I echo my previous dissents’ conclusions regarding the state’s interests: the Act does not survive even intermediate scrutiny. See Wollschlaeger v. Governor of Florida, 760 F.3d 1195, 1256-67 (11th Cir. 2014) (Wilson, J., dissenting); Wollschlaeger v. Governor of Florida, 797 F.3d 859, 919-930 (11th Cir. 2015) (Wilson, J., dissenting).
*1326 II. The Anti-Harassment Provision
I concur with Judge Marcus’s analysis of the anti-harassment provision and his conclusion finding it void for vagueness. As I stated in my previous dissents, even if medical intuition tells a doctor that persistence is necessary, he will not know at what point his persistent questions constitute the harassment barred by the Act. The Act fails to establish a line between medically necessary advice and unnecessary harassment, and thus requires doctors to self-censor or risk losing their license. Because people of “common intelligence” are left guessing as to the meaning of the Act, see Harris v. Mexican Specialty Foods, Inc., 564 F.3d 1301, 1310 (11th Cir. 2009) (internal quotation marks omitted), the provision is void for vagueness.
III. The Anti-Discrimination Provision
Although I concur with the majority’s conclusion regarding the anti-discrimination provision, I still have doubts regarding the provision’s constitutionality. If the provision was narrowed to encompass only conduct, such as adjusting office hours or rates,[2]1 would not find issue with it. However, as the legislative history makes clear, the anecdotes of discrimination that motivated the Act all stemmed from speech. And it strains credulity to imagine scenarios in which this Act will be used to punish only conduct, and not speech.
Even if the Act is construed to apply only to conduct, leaving the anti-discrimination provision in place risks chilling speech. Doctors may be hesitant to inquire about firearm ownership, as inquiries are strong evidence of a discriminatory motive. See generally Barbano v. Madison Cnty., 922 F.2d 139 (2d Cir. 1990). Doctors may be legitimately worried that, if their patients subsequently complain, their initial inquiries will be used as evidence of discrimination. Such fear of punishment could lead to doctors avoiding asking those questions — the precise type of chilling effect we should fear. “[I]n the field[] of medicine ... where information can save lives,” Sorrell, 564 U.S. at 566, 131 S.Ct. at 2664, this result is all the more dire. With safety at stake, we cannot afford to silence these voices.
I also worry that the discrimination provision appears to be a variant of the harassment provision. Because the majority opinion strikes down the harassment provision, my concern is that the state will now use the discrimination provision to punish harassing conduct. The Act defines neither harassment nor discrimination. It seems to me that the same speech that constituted harassment could now constitute “discriminatory harassment”[3] and thus be prohibited.
However, I also recognize that the Supreme Court has stated that anti-discrimination provisions prohibiting discriminatory conduct “do not, as a general matter, violate the First or Fourteenth Amendments.” See Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston, 515 U.S. 557, 571-72, 115 S.Ct. 2338, 2346 (1995). *1327 Based on this guiding principle, and on a narrow reading of the provision, I would not strike down the discrimination provision. But I remain skeptical of the government’s motivation behind this Act. And I urge that in all future cases reviewing content- and viewpoint-based speech regulations we remain steadfast in our resolve to protect speech and be wary of any law that muzzles entire categories of speech.

. Admittedly, the Supreme Court has acknowledged that there may exist some categories of speech that have not yet been specifically identified in our case law. See United States v. Stevens, 559 U.S. 460, 470, 130 S.Ct. 1577, 1586 (2010). However, before allowing a category of speech to fall into the exemptions from the normal prohibition on content-based restrictions, “the Court must be presented with persuasive evidence that a novel restriction on content is part of a long (if heretofore unrecognized) tradition of proscription.” See Alvarez, 132 S.Ct. at 2547 (citing Brown v. Entm’t Merck. Assn., 564 U.S. 786, 792, 131 S.Ct. 2729, 2734, 180 L.Ed.2d 708 (2011)). Here, the government has failed to persuade us. Just because this regulation lies in the realm of private professionals, there is not a historic tradition that would warrant exempting regulation of truthful speech by doctors.

. I still have doubts about how realistic these proposed hypotheticals are. There is no evidence in the record that the state’s proposed discriminatory ‘conduct’ (e.g., denying referrals, creating longer wait times, cancelling appointments) actually occurred, or is likely to occur.

. Justice Alito, then circuit judge, once used the phrase "discriminatory harassment.” See Saxe v. State Coll. Area Sch. Dist., 240 F.3d 200, 204 (3d Cir. 2001).